**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
Eastern Division**

_____
                                                )
QUANTUM CATALYTICS, LLC, a          )
Delaware limited liability company, and   )
TEXAS SYNGAS, INC., a Nevada         )     **CIV.  A.  NO.**
corporation,                                      )
                                                )
            Plaintiffs,                            )
                                                )
v.                                              )     **COMPLAINT AND JURY DEMAND**
                                                )
ZE-GEN, INC., a Delaware corporation;    )
WILLIAM ("BILL") DAVIS, an individual;   )
NEW BEDFORD WASTE SERVICES,        )
LLC, a Massachusetts limited liability     )
company; VANTAGEPOINT VENTURES,    )
INC., a Delaware corporation; FLAGSHIP  )
VENTURES LLC, a Delaware limited       )
liability company; IRV MORROW, an       )
individual; and DAVID H. JUDSON,        )
an individual,                                   )
                                                )
            Defendants.                         )
_____  )

       Plaintiffs Quantum Catalytics, LLC (formerly referred to as Quantum Catalytics, Inc.),

and Texas Syngas, Inc. (collectively "Plaintiffs") bring this complaint against Defendants Ze–

Gen, Inc.; William ("Bill") Davis; New Bedford Waste Services, LLC; VantagePoint Ventures,

Inc.; Flagship Ventures LLC; Irv Morrow; and David H. Judson (collectively "Defendants"),

alleging as follows:

<u>**THE PARTIES**</u>

       1.       Quantum Catalytics, LLC (hereinafter "Quantum") is a Delaware limited liability

company with its principal place of business in Fall River, Massachusetts.

2.     Texas Syngas, Inc. (hereinafter "TSI", and collectively with Quantum, "Plaintiffs"), is a Nevada corporation with its principal place of business in Houston, Texas.

3.     On information and belief, Ze–Gen, Inc. (herein "ZeGen") is a Delaware corporation with its principal place of business in Boston, Massachusetts and may be located for service of process through its president:

> Bill Davis, President
> Ze – Gen, Inc.
> 70 Franklin Street
> Third Floor
> Boston, MA  02110

4.     William "Bill" Davis (herein "Davis") is the President of Defendant ZeGen.  On information and belief, Davis is an individual who may be located for service of process at his place of principal employment:

> William "Bill" Davis, President
> Ze–Gen, Inc.
> 70 Franklin Street
> Third Floor
> Boston, MA  02110

5.     On information and belief, New Bedford Waste Services, LLC (herein "New Bedford Waste") is a Massachusetts limited liability company with its principal place of business in New Bedford, Massachusetts, and may be located for service of process by and through its President:

> Michael Camara, President
> New Bedford Waste Services, LLC
> 1245 Shawmut Ave.
> New Bedford, MA  02745

6.     On information and belief, Defendant VantagePoint Ventures, Inc. ("Vantage") is a Delaware corporation, not registered to business in Massachusetts.  Vantage maintains a principal office at:

> Vantage Point Venture Partners
> 1001 Bayhill Drive
> Suite 300
> San Bruno, CA 94066

7.     On information and belief, Defendant Flagship Ventures LLC ("Flagship") is a Delaware limited liability company registered to do business in Massachusetts.   Flagship maintains a principal office at:

> Flagship Ventures
> One Memorial Drive
> 7th Floor
> Cambridge, MA 02142

8.     On information and belief, Defendant Irv Morrow ("Morrow") is the Chief Technology Officer of Defendant ZeGen.   On information and belief, Morrow is an individual who may be located for service of process at his place of principal employment:

> Irv Morrow, Chief Technology Officer
> Ze–Gen, Inc.
> 1380 Soldiers Field Road
> Second Floor
> Boston, MA 02135

9.     On information and belief, Defendant David H. Judson ("Judson") is the Intellectual Property Counsel for Defendant ZeGen.   On information and belief, Judson is an individual who may be located for service of process at his place of business:

> David H. Judson
> Intellectual Property Law
> 15950 Dallas Parkway, Suite 225
> Dallas, TX 75248

## JURISDICTION

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1338(b) because this action arises under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271 *et seq.*

11.     This Court has supplemental jurisdiction pursuant to 28 U. S. C.  § 1367(a) over Plaintiffs' claims arising under state law because these claims are so related to Plaintiffs' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

12.     This Court has personal jurisdiction over each of the Defendants in that each of the Defendants has purposefully directed their activities toward the Commonwealth of Massachusetts and established minimum contacts with this forum.  As described in detail below, each of the Defendants has actively participated in, contributed to, or induced acts of direct and indirect infringement within this District, and each has further actively participated in or aided and abetted the misappropriation of trade secrets, conspiracy, unfair competition, and unfair and deceptive practices alleged in this complaint.  Further, as described in detail below, each of the Defendants has entered into contractual and business relationships with parties in the Commonwealth, thereby establishing significant, systematic, and continuous contacts with the Commonwealth.

**VENUE**

13.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1331, 1338 (a) and (b), 1391(b), (c) and (d), and 1400 (b).

**FACTS COMMON TO ALL COUNTS**

**A.      Plaintiffs Quantum and TSI Own Rights
To Innovative and Valuable Patented and Trade Secret Technology**

14.     Plaintiffs Quantum and TSI are affiliated companies engaged in the business of utilizing low-cost hydrocarbons, such as biomass, waste products, and coal to create environmentally friendly, low-cost energy through a complex and highly valuable gasification process.  Plaintiffs are the leaders in the field in this technology.  Their well-respected

employees, which include leading scientists and graduates from the Massachusetts Institute of Technology (MIT) and Carnegie Mellon University, have spent years creating the Plaintiffs' technology and Plaintiffs have expended enormous amounts in research and development. The Plaintiffs have obtained patents on certain aspects of their innovative technology, while other aspects are kept confidential and protected as valuable trade secrets.

15.     For example, in one application of Plaintiffs' state of the art gasification technology, a molten metal gasifier is used to process hydrocarbons such as coal, petroleum coke, liquid or solid waste products to produce clean, environmentally friendly synthetic gas (commonly referred to as "syngas"). The syngas is primarily hydrogen and carbon monoxide, which can be used for power generation, chemical feedstocks, or to produce petroleum products such as low sulfur diesel and naphtha.

16.     Quantum is the owner of all rights and interests in the following United States Patents ("Patents-In-Suit"), which cover aspects of Plaintiffs' innovative technology:

| U.S. Patent No. | Title of Patent | Date Issued | Claims Asserted |
|---|---|---|---|
| 5,191,154 | Method and System for Controlling Chemical Reaction in Molten Bath | March 2, 1993 | 1 |
| 5,322,547 | Method for Indirect Chemical Reduction of Metals in Waste | June 21, 1994 | 1, 37 |
| 5,358,549 | Method of Indirect Chemical Reduction of Metals in Waste | October 25, 1994 | 1, 35 |
| 5,358,697 | Method and System for Controlling Chemical Reaction in a Molten Bath | October 25, 1994 | 1 |
| 5,436,210 | Method and Apparatus for Injection of Liquid Waste into a Molten Bath | July 25, 1995 | 1, 6, 7 |
| 5,679,132 | Method and System for Injection of a Vaporizable Material into a Molten Bath | October 21, 1997 | 1, 17-22 |

| 5,744,117 | Feed Processing Employing Dispersed Molten Droplets | April 28, 1998 | 1 |
|-----------|-----------------------------------------------------|----------------|---|
| 5,537,940 | Method for Treating Organic Waste | July 23, 1996 | 1, 11 |
| 5,866,095 | Method and System of Formation and Oxidation of Dissolved Atomic Constituents in a Molten Bath | February 2, 1999 | 1 |
| 5,555,822 | Apparatus for Dissociating Bulk Waste in a Molten Metal Bath | September 17, 1996 | 1 |
| 5,571,486 | Method and Apparatus for Top-Charging Solid Waste into a Molten Metal Bath | November 5, 1996 | 1 |
| 5,505,143 | System for Controlling Chemical Reaction in a Molten Metal Bath | April 9, 1996 | 1, 9 |
| 5,491,279 | Method for Top-Charging Solid Waste into a Molten Metal Bath | February 13, 1996 | 1, 9, 10 |
| 5,301,620 | Reactor and Method for Disassociating Waste | April 12, 1994 | 1, 12, 13 |

17.     The Patents-In-Suit were duly and legally issued pursuant to the laws of the United States on the dates as set forth above in Paragraph 16, and they are valid and subsisting. True and correct copies of the Patents-In-Suit are attached to this Complaint as Exhibits "A" through "N".

18.     Plaintiffs have also developed and obtained exclusive licenses to valuable and confidential business and technical information concerning proprietary gasification processes and apparatuses for implementing these processes ("Trade Secrets").  Both the Patents-In-Suit and the Trade Secrets represent hundreds of thousands of man hours of research and development involving some of the leading scientists in the field.  The Trade Secrets, in connection with the Patents-In-Suit, provide several major advantages over existing gasification technologies, including lower capital and operating cost, higher efficiency, and/or a shorter lead time to commercial operation.

19.    Molten Metal Technology, Inc. ("Molten Metal Technology") was the original assignee of the Patents-in-Suit.  Molten Metal Technology developed the initial molten metal bath technology, including some of the specifications, operation parameters, design tolerances, chemical processes, and other technical information that comprise Plaintiffs' Trade Secrets. Plaintiffs acquired almost all of Molten Metal Technology's patent portfolio from the Molten Metal Technology bankruptcy estate.

20.    Plaintiff TSI holds exclusive licenses to the technology protected by the Patents-in-Suit and the Trade Secrets (the "Protected Technology"), and it has the right to bring suit to enforce its exclusive rights in the Protected Technology.

**B.    Defendants Infringe the Patents-in-Suit and
Have Misappropriated Plaintiffs' Trade Secrets**

21.    On information and belief, Defendants, jointly and individually, have infringed and continue to infringe the Patents-In-Suit, either directly or indirectly, literally and/or under the doctrine of equivalents.  The Defendant's infringing activity includes, at least, the manufacture, use, sale, and offer for sale of infringing products, the use of infringing methods, and inducing and/or contributing to the infringement of the Patents-in-Suit.  On information and belief, Defendants ZeGen, Davis, Vantage, Flagship and Morrow, jointly and individually, have wrongfully acquired Plaintiffs' Trade Secrets to facilitate Defendants' infringing activity or otherwise unjustly enrich Defendants.

22.    On information and belief, ZeGen, Davis, and New Bedford Waste have built and continue to operate an infringing gasification facility in New Bedford, Massachusetts (the "Infringing Facility") that utilizes Plaintiffs' proprietary molten bath technology to convert waste into syngas.  New Bedford Waste built or otherwise provided aspects of the Infringing Facility at the direction of ZeGen and/or Davis.  The Infringing Facility utilizes methods and apparatuses

that infringe the Patents-In-Suit.  Furthermore, the design and operation of the Infringing Facility is based on Plaintiffs' misappropriated Trade Secrets.

23.     On information and belief, Defendants had actual notice of the Patents-In-Suit and the infringing nature of their activities before Plaintiffs filed suit.

24.     On information and belief, Defendants Vantage and Flagship have knowingly participated in, contributed to, caused, and induced the infringement of the Patents-In-Suit by virtue of their monetary support and control of Defendant ZeGen, their knowledge of the Patents-In-Suit, their active involvement on ZeGen's Board of Directors, their control and influence over ZeGen and its infringing activities, and/or their active role in Defendants' misappropriation of Plaintiffs' Trade Secrets to assist Defendants ZeGen and New Bedford Waste in building and/or operating the Infringing Facility.

25.     On information and belief, Defendants ZeGen, Davis, Vantage, Flagship, Morrow and Judson have misappropriated and wrongfully obtained Plaintiffs' Trade Secrets.  Defendants had knowledge of the Patents-In-Suit and further knew that Plaintiffs, a competitor of ZeGen, possess commercially valuable Trade Secrets.  Defendants sought to gain access to Plaintiffs' Trade Secrets and Protected Technology, and when Plaintiffs refused to allow them access or a license, Defendants set out to obtain the technology through a systematic scheme of unfair, deceptive, and illegal conduct.  By means of these acts, Defendants misappropriated Plaintiffs' Trade Secrets and Protected Technology, thereby gaining an unfair advantage in the marketplace and a significant financial benefit.

### C.     **Defendants Scheme to Steal Plaintiffs' Protected Technology**

26.     On information and belief, in about late 2003 to early 2004, Bill Davis began working at Barletta Willis Investments LLC ("Barletta") and, while working there, learned of

technology to decompose waste products.   In approximately 2003 to 2004, Michael Camara, the co-owner of Defendant New Bedford Waste, met with Davis while Davis was still at Barletta. As a result of this meeting, Davis and Camara formed New Bedford Renewable Energy, LLC, which was a combination of ZeGen and Solid Waste Services, Inc., a company co-owned by Camara.   Defendant ZeGen was founded on July 14, 2004.

27.     On information and belief, while working at Barletta, Davis learned of an individual named Igor Polovtsev.   After Polovtsev's employer went out of business, Davis, through ZeGen, hired Polovtsev in the spring of 2004.   Polovtsev became ZeGen's chief science officer and advisor to Davis.

28.     In the fall of 2004, ZeGen hired Vick Gatto, who had formerly been employed by Molten Metal Technology, as a consultant.   By virtue of his prior employment, Gatto knew confidential information relating to the Protected Technology, and ZeGen hired Gatto, at least in part, because of Gatto's confidential information.   After hiring Gatto, ZeGen's technology and business shifted to the use of molten metal technology.

29.     On information and belief, on May 12, 2005, Davis contacted Sowood Capital Management ("Sowood") in order to obtain funding for the Infringing Facility.   Davis' contact at Sowood was Nader Mafi ("Mafi").   During this correspondence, Mafi requested that Davis send Mafi technical data concerning the Infringing Facility to allow Sowood to determine whether to invest in ZeGen.   Davis sent Mafi the technical information that he had requested, which information comprised the Plaintiffs' Protected Technology and Trade Secrets.   These communications are thus acts of trade secret misappropriation and offers for sale that infringe the Patents-in-Suit. Ultimately, on November 17, 2005, Mafi sent an email to ZeGen declining ZeGen's request for funding.

30.     In or about the spring of 2005, Gatto recommended to Davis that he approach Michael Collins, a principal of TSI, because Gatto believed that Collins would be willing to license essential molten metal technology to ZeGen.  Davis thereafter approached John Preston, President of Quantum, on or about November 14, 2005, and again on or about December 29, 2005, requesting a license to operate under the Patents-In-Suit.  Neither TSI nor Quantum agreed to grant Defendants a license to the Protected Technology.  Despite his actual knowledge of the Patents-In-Suit, their ownership and subject matter, and Plaintiffs' refusal to grant a license, Davis and ZeGen nevertheless proceeded to willfully and knowingly infringe the Patents-In-Suit by building and operating the Infringing Facility.

31.     On information and belief, Defendant ZeGen also developed a number of business plans and executive summaries describing Plaintiffs' Protected Technology.  Defendants used and distributed these documents to market ZeGen and its infringing technology, and in connection with their efforts to obtain funding for the Infringing Facility.  The transmission of these plans and information constitutes an infringing offer for sale under 35 U.S.C. § 271(a).

32.     On information and belief, at some time in 2005, Solid Waste Services, Inc. and New Bedford entered into several contracts with ZeGen, including investments, leases, and waste disposal agreements.  These agreements were critical to ZeGen's development and for funding the Defendants' Infringing Facility.  Because Defendants New Bedford Waste and ZeGen actively participated in and contributed to the development of the Infringing Facility, both defendants are liable for patent infringement.

33.     Davis and ZeGen set about hiring other individuals, in addition to Polovtsev and Gatto, who knew confidential information about the Protected Technology and Trade Secrets.  On information and belief, ZeGen hired Eugene Berman in the first quarter of 2005.  The former

in-house patent counsel for both Molten Metal Technology and Plaintiff Quantum Catalytics, Berman was extremely familiar with Plaintiffs' Protected Technology and Trade Secrets, and he shared it with Davis and ZeGen, in violation of his contractual and fiduciary obligations.

34.     Apparently, once ZeGen acquired information about the Protected Technology, these individuals were no longer necessary, as ZeGen had no intention of developing its own technology.   Thus, in the summer of 2005, ZeGen discharged Polovtsev.   Later that same summer, ZeGen also discharged Gatto.  ZeGen then discharged Berman in the fall of 2006

35.     Davis also analyzed the details of Molten Metal Technology's bankruptcy estate, all for the purposes of scavenging the Protected Technology.   The conduct of Davis, New Bedford Waste, and ZeGen leave no doubt that the Defendants were interested, from the inception, in infringing and misappropriating Plaintiffs' Protected Technology.

**D.     Defendants File Fraudulent Patent Applications
to Further Misappropriate Plaintiffs' Protected Technology**

36.     Before terminating Berman's employment, ZeGen instructed Berman to file a patent application that was based upon Molten Metal Technology's own trade secret and patented technology – the Protected Technology that now rightfully belongs to Plaintiffs.

37.     ZeGen and Davis have similarly instructed Defendant Judson to draft, file and prosecute fraudulent patent applications, which purport to claim rights in technology that Defendants knew belonged to Plaintiffs.

38.     Defendant Judson has also actively participated in and contributed to Defendants' misappropriation of Plaintiffs' Protected Technology.   Among other things, Judson has facilitated Defendants' wrongful conduct by monitoring Plaintiffs' activities and patent estate and providing Defendants with advice and counsel on how to conceal Defendants' infringing activities and misappropriation of Plaintiffs' Trade Secrets.

39.     The actions described above are fraudulent because (1) Judson, as a patent attorney licensed to practice before the United States Patent and Trademark Office ("USPTO"), has a duty of candor to the USPTO under 37 CFR 1.56; (2) ZeGen and Davis, as named assignee and applicant, respectively, on the fraudulent patent applications filed with the USPTO, also owe a duty of candor to the USPTO; (3) Defendants ZeGen, Davis and Judson have committed fraud on the USPTO and violated their duty of candor by filing fraudulent patent applications that name Davis as an inventor, when in reality, these patent applications are based entirely on Plaintiffs' patented technology and Trade Secrets; and (4) Defendants ZeGen, Davis and Judson have committed fraud on the USPTO and violated their duty of candor by misrepresenting the state of the prior art by, among other actions, purposefully failing to notify the USPTO of the Patents-in-Suit and other patents assigned to Plaintiffs or Molten Metal Technology.

### E.     Defendants Hired Fraser to Misappropriate Plaintiffs' Trade Secrets

40.     In 2005, Texas Syngas LLC, an affiliate of Plaintiffs, hired MPR Associates, Inc. ("MPR"), an engineering and technology consulting company in Houston, to provide an independent analysis of Plaintiffs' Protected Technology and Trade Secrets.  As is its custom, Texas Syngas LLC informed MPR and its employees that the information about the Protected Technology is highly valuable, proprietary, and confidential trade secret information, and it required MPR to sign a confidentiality and nondisclosure agreement.  The agreement prohibits MPR and its agents and employees from disclosing the information about Plaintiffs' Protected Technology.

41.     Scott Fraser ("Fraser") was an employee of MPR who participated in MPR's analysis of the Protected Technology.  Fraser is bound by the confidentiality and nondisclosure agreement signed by MPR, but, in addition, he also personally signed a confidentiality and nondisclosure agreement with Plaintiffs' affiliate.  In reliance on this relationship of trust and

confidence, Plaintiffs' affiliate granted Fraser access to the Trade Secrets and Protected Technology.

42.    ZeGen somehow learned that Fraser had acquired access to Plaintiffs' Protected Technology.   ZeGen surreptitiously solicited Fraser to work for ZeGen on ZeGen's infringing gasification process.   ZeGen was aware of Fraser's contractual and fiduciary obligations and his position of trust and confidence.   Based on information and belief, ZeGen solicited Fraser knowingly and in a deliberate effort to gain improper access to Plaintiffs' Trade Secrets and Protected Technology, to facilitate ZeGen's infringing activity.

43.    Fraser accepted ZeGen's offer and provided ZeGen with access to Plaintiffs' Trade Secrets and Protected Technology.   ZeGen's solicitation and receipt of and Fraser's disclosure of this information was unlawful and unauthorized.

44.    Having acquired this information, ZeGen wrongfully exploited it to facilitate ZeGen's design and operation of the Infringing Facility.   ZeGen's ability to design and/or operate the Infringing Facility is enhanced, in substantial part, by the Trade Secrets wrongfully obtained via Fraser.   All of the Defendants benefit financially from this wrongful acquisition of Plaintiffs' Trade Secrets.

45.    Fraser and Defendant ZeGen have consented to the entry of a temporary restraining order (TRO) entered against them in Texas state court that prohibits them from utilizing or sharing the Trade Secrets.   This TRO was entered on January 29th, 2008, in Cause No. 2008-05280, *Texas Syngas, LLC v. Scott Fraser et al.*, in the 127th Judicial District of Harris County, Texas. A true and correct copy of the TRO is attached hereto as Exhibit O.

F.    **All Defendants Share Financial Benefits From Their Wrongful Acts**

46.    On information and belief, Defendants Vantage and Flagship possess an ownership interest in ZeGen.

13

47.    Vantage's CleanTech Group includes ZeGen as a portfolio company.

48.    Vantage actively participates in the governance and management of ZeGen's business and knowingly contributed to the infringing conduct and misappropriation of the Protected Technology.   Scott Brown, the co-founder and practice leader of the infrastructure practice at Vantage and a member of Vantage's CleanTech group, is one of the five members of ZeGen's board of directors.   By virtue of its investment and the position of one of its officers on ZeGen's board, Vantage has the right, influence, and/or ability to control ZeGen's involvement in infringing activity and possesses a financial interest in promoting such infringing activity.

49.    Flagship also actively participates in the governance and management of ZeGen's business and knowingly contributed to the infringing conduct and misappropriation of the Protected Technology.    Jim Matheson, a General Partner of Flagship Ventures, is Chairman of the Board of Directors of ZeGen.   By virtue of its investment and the position of one of its principals as Chairman of ZeGen's board, Flagship has the right, influence, and/or ability to control ZeGen's involvement in infringing activity and possesses a financial interest in promoting such infringing activity.

## CLAIMS FOR RELIEF

### COUNT I - INFRINGEMENT OF THE PATENTS-IN-SUIT

.

50.    Plaintiffs repeat and reincorporate by reference the allegations set forth in paragraphs 1 through 49.

51.    By virtue of the above-alleged facts, Defendants have infringed the Patents-In-Suit in violation of 35 U.S.C. § 271.

52.     Based on information and belief, Defendants ZeGen, Davis and New Bedford Waste have directly infringed and continue to directly infringe one or more of the Patents-In-Suit under 35 U.S.C. § 271(a).  These infringing acts include at least the manufacture, use, sale, and/or offer for sale of an infringing apparatus and/or infringing method.

### B.     Inducement of Infringement of the Patents-In-Suit

53.     Based on information and belief, Defendants Vantage, Flagship, Morrow,  and Judson have contributed to and continue to contribute to the infringement of the Patents-In-Suit and have induced infringement of and continue to induce infringement of one or more of the Patents-In-Suit pursuant to 35 U.S.C. § 271(b).  These infringing acts include actively and knowingly participating in, encouraging, and aiding and abetting direct infringement by Defendants ZeGen, Davis and New Bedford Waste.

54.     Based on information and belief, Defendants ZeGen and Davis have contributed to and continue to contribute to the infringement of the Patents-In-Suit and have induced infringement of and continue to induce infringement of one or more of the Patents-In-Suit pursuant to 35 U.S.C. § 271(b).  These infringing acts include actively and knowingly aiding and abetting direct infringement by Defendant New Bedford Waste.

55.     Based on information and belief, Defendant New Bedford Waste has contributed to and continues to contribute to the infringement of the Patents-In-Suit and has induced infringement of and continues to induce infringement of one or more of the Patents-In-Suit pursuant to 35 U.S.C. § 271(b).  These infringing acts include actively and knowingly aiding and abetting direct infringement by Defendants ZeGen and Davis.

### C.     Contributory Infringement of the Patents-In-Suit

56.     Defendants Vantage, Flagship, Morrow,  and Judson have contributorily infringed and continue to contribute to the infringement of the Patents-In-Suit under 35 U.S.C. § 271(c).

57. Based on information and belief, Defendant New Bedford Waste has contributorily infringed and continues to contribute to the infringement of the Patents-In-Suit under 35 U.S.C. § 271(c). These infringing acts include the sale or offer for sale of a material component of an apparatus covered by the Patents-In-Suit or for use in practicing a process covered by the Patents-In-Suit, knowing the same to be especially made or especially adapted for use in an infringement of the Patents-In-Suit, wherein such material component is not a staple article or commodity of commerce suitable for substantial noninfringing use.

**D.      The Infringement is Willful and Plaintiffs Are Entitled to Relief**

58. Based on information and belief, Defendants' infringement of the Patents-In-Suit is willful and deliberate, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

59. Based on information and belief, Defendants' infringing acts have been the actual and proximate cause of damage to Plaintiffs and will continue to cause monetary damages, as well as irreparable harm, unless Defendants are enjoined by this Court from continuing to infringe, contribute to, and/or induce infringement of the Patents-In-Suit.

## COUNT II - CASE EXCEPTIONAL 35 U.S.C. § 285

60. Plaintiffs repeat and reincorporate by reference the allegations set forth in paragraphs 1 through 59.

61. Based on information and belief, Defendants' infringement of the Patents-In-Suit is willful and deliberate, entitled Plaintiffs to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT III - MISAPPROPRIATION OF TRADE SECRETS

62. Based on information and belief, Defendants have misappropriated Plaintiffs' Trade Secrets.

63.     Plaintiffs have made a substantial investment of time, effort, and money in creating the Trade Secrets and have property rights therein.  The Trade Secrets comprise formulae, devices and/or compilations of information used in business that are not generally known and which give Plaintiffs an opportunity to obtain an advantage over competitors who do not know or use the Trade Secrets.

64.     Based on information and belief, Defendants have wrongfully acquired or otherwise misappropriated the Trade Secrets by breach of confidential relationship or other improper means.  Defendants have used and are using the Trade Secrets without Plaintiffs' authorization.

65.     By virtue of the foregoing, Defendants are unjustly enriched and have an unfair advantage in using the Trade Secrets without having the expense of either a legal license or of bearing the time and expense of independently developing said Trade Secrets.

66.     Defendants have and continue to unfairly compete with Plaintiffs by engaging in the acts set forth herein.

67.     Defendants' acts have been the actual and proximate cause of damage to Plaintiffs and will continue to cause monetary damages, as well as irreparable harm to Plaintiffs for which it has no adequate remedy at law, unless Defendants are enjoined by this Court from continuing to wrongfully exploit the Trade Secrets.

## COUNT IV – UNFAIR COMPETITION

68.     Plaintiffs repeat and reincorporate by reference the allegations set forth in paragraphs 1 through 67.

69.     The conduct described in this Complaint constitutes unfair competition, in violation of Massachusetts and other states' common law.

70. By virtue of this wrongful conduct, Defendants are unjustly enriched and have an unfair advantage in using the Plaintiffs' Protected Technology. without having the expense of either a legal license or of bearing the time and expense of independently developing said Trade Secrets.

71. Defendants have and continue to unfairly compete with Plaintiffs by engaging in the acts described in this Complaint.

72. Defendants' acts have been the actual and proximate cause of damage to Plaintiffs and will continue to cause monetary damages, as well as irreparable harm to Plaintiffs for which it has no adequate remedy at law, unless Defendants are enjoined by this Court from continuing to engage in unfair competition.

## <u>COUNT IV – VIOLATIONS OF MASS. GEN. L. C. 93A</u>

73. Plaintiffs repeat and reincorporate by reference the allegations set forth in paragraphs 1 through 72.

74. Plaintiffs are engaged in the conduct of trade and commerce.

75. Defendants are engaged in the conduct of trade and commerce.

76. Defendants have engaged in unfair, deceptive, and unlawful acts and unfair methods of competition in violation of M. G. L. c. 93A, §§ 2 and 11 by, among other things, knowingly misappropriating Plaintiffs' Trade Secrets and Protected Technology to compete unfairly with Plaintiffs, deliberately interfering with Plaintiffs' contractual and confidential relationships and deliberately inducing Gatto, Berman, Fraser, and others to disclose Plaintiffs' Trade Secrets, and fraudulently filing applications in the USPTO in which they falsely claim Plaintiffs' Protected Technology as their own and fraudulently represent the state of the prior art.

77.     Plaintiffs have suffered losses of money and property as a result of the Defendants' wrongful conduct.

78.     The Defendants have willfully and knowingly engaged in these unfair methods of competition and these unfair, deceptive and unlawful acts and practices.

79.     Plaintiffs are entitled to immediate equitable relief, including an order directing the Defendants to cease using Plaintiffs' Trade Secrets and Protected Technology, as well as an award of actual damages, multiple damages and attorneys fees.

## **PRAYER FOR RELIEF**

WHEREFORE Quantum Catalytics, Inc. and Texas Syngas, Inc., pray that this Court enter judgment as follows:

A.     That a preliminary and permanent injunction be issued restraining Defendants, Ze-Gen, Inc., William "Bill" Davis, New Bedford Waste Services, LLC, VantagePoint Ventures, Inc., Flagship Ventures LLC, Irv Morrow, and David H. Judson (collectively "Defendants"), their agents, servants, employees and attorneys and those persons in active concert or participation with them, from infringing, contributing to infringement and/or inducing others to infringe the above listed United States Patents pursuant to 35 U.S.C. § 283;

B.     That a judgment against Defendants be entered for such patent infringement and damages found, together with interest and costs pursuant to 35 U.S.C. § 284;

C.     That in such judgment, the actual damages found for such infringement be trebled as authorized by 35 U.S.C. § 284 in view of the knowing, willful, and intentional nature of Defendants' actions;

D.     In light of the exceptional nature of the acts of Defendants, such judgment include judgment for the reasonable and necessary attorneys' fees required in pursuit of this action pursuant to 35 U.S.C. § 285;

E.     That a preliminary and permanent injunction be issued restraining Defendants, their agents, servants, employees and attorneys and those persons in active concert or participation with them, from further misappropriation, use or communication of Plaintiffs' Trade Secrets;

F.      That the temporary restraining order entered on January 29th, 2008, in Cause No. 2008-05280, *Texas Syngas, LLC v. Scott Fraser et al.*, in the 127th Judicial District of Harris County, Texas be ratified by this Court and given full effect in the Commonwealth of Massachusetts;

G.      That judgment be entered for the damages found and attributed to Defendants' unfair competition and trade secret misappropriation;

H.      That judgment against Defendants be entered for violations of Mass. Gen. L. c. 93A, §§ 2 and 11, and that such violations were willful;

I.      That judgment against Defendants be entered for the damages found and attributed to Defendants' unfair methods of competition and unfair, deceptive, and unlawful practices in violation of M. G. L. c. 93A, §§ 2 and 11, trebled on account of defendants' willful conduct, plus Plaintiffs' costs and reasonable attorneys' fees; and

J.      An award of prejudgment and post-judgment interest and such other and further relief as the Court deems just and appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. 38 (b) Plaintiffs demand a trial by jury on all issues so triable.


DATED:  August 22, 2008                    Respectfully submitted,

                                           QUANTUM CATALYTICS, LLC and
                                           TEXAS SYNGAS, INC.

                                           By their attorneys,

                                           BROWN RUDNICK LLP


                                           By: _____/s/ Edward J. Naughton_____
                                                 Edward J. Naughton (BBO#600059)
                                                 Benjamin M. Welch (BBO# 663456)
                                                 One Financial Center
                                                 Boston, Massachusetts 02111
                                                 617.856.8200
                                                 enaughton@brownrudnick.com


*Of counsel:*
Ira P. Domnitz
Texas State Bar No. 24036492
Khannan Suntharam
Texas State Bar No. 24008112
600 Travis Street, Suite 1100
Houston, Texas  77002
Phone:  713.650.8400
Fax:  713.650.2400


Kelly D. Stephens
S.D. #8535
Texas State Bar No. 19158300
1040 Heights Blvd
Houston, Texas 77008
Phone:  713.252.4945