UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Eastern Division

QUANTUM CATALYTICS, LLC, and
TEXAS SYNGAS, INC.,
                    Plaintiffs,

v.

ZE-GEN, INC.; WILLIAM ("BILL") DAVIS;
NEW BEDFORD WASTE SERVICES,
LLC; VANTAGEPOINT MANAGEMENT,
INC.; VANTAGEPOINT CLEANTECH
PARTNERS, LP; VANTAGEPOINT
VENTURE PARTNERS 2006 (Q), LP;
FLAGSHIP VENTURES 2004 FUND LLC;
and IRV MORROW,
                    Defendants.

C.A. No.1:08-cv-11456

**SECOND AMENDED COMPLAINT
AND JURY DEMAND**

(Leave to file granted January 21, 2009)

Plaintiffs Quantum Catalytics, LLC (formerly referred to as Quantum Catalytics, Inc.),

and Texas Syngas, Inc. (collectively "Plaintiffs") bring this complaint against Defendants Ze–

Gen, Inc.; William ("Bill") Davis; New Bedford Waste Services, LLC; VantagePoint

Management, Inc.; VantagePoint CleanTech Partners, LP; VantagePoint Venture Partners 2006

(Q), LP; Flagship Ventures 2004 Fund LLC; and Irv Morrow (collectively "Defendants"),

alleging as follows:

## THE PARTIES

1.      Quantum Catalytics, LLC (hereinafter "Quantum") is a Delaware limited liability

company with its principal place of business in Fall River, Massachusetts.

2.      Texas Syngas, Inc. (hereinafter "TSI", and collectively with Quantum,

"Plaintiffs"), is a Nevada corporation with its principal place of business in Houston, Texas.

3.      On information and belief, Ze-Gen, Inc. (herein "Ze-Gen") is a Delaware

corporation with its principal place of business in Boston, Massachusetts and may be located for

service of process through its president:

> Bill Davis, President
> Ze-Gen, Inc.
> 70 Franklin Street
> Third Floor
> Boston, MA  02110

4.      William ("Bill") Davis (herein "Davis") is the President of Defendant Ze-Gen.

On information and belief, Davis is an individual who may be located for service of process at

his place of principal employment:

> William Davis, President
> Ze–Gen, Inc.
> 70 Franklin Street
> Third Floor
> Boston, MA  02110

5.      On information and belief, New Bedford Waste Services, LLC (herein "New

Bedford Waste") is a Massachusetts limited liability company with its principal place of business

in New Bedford, Massachusetts, and may be located for service of process by and through its

President:

> Michael Camara, President
> New Bedford Waste Services, LLC
> 1245 Shawmut Ave.
> New Bedford, MA  02745

6.      On information and belief, VantagePoint Management, Inc. is a Delaware

corporation.   VantagePoint CleanTech Partners, LP and VantagePoint Venture Partners 2006

(Q), LP are Delaware limited partnerships affiliated with and controlled by VantagePoint

Management, Inc.  Each has its principal place of business at

> 1001 Bayhill Drive, Suite 300
> San Bruno, CA 94066

VantagePoint Management, Inc., VantagePoint CleanTech Partners, LP, and VantagePoint

Venture Partners 2006 (Q), LP are sometimes referred to collectively as "VantagePoint."

7.    On information and belief, Flagship 2004 Fund Ventures LLC ("Flagship") is a

Delaware limited liability company registered to do business in Massachusetts.  Flagship

maintains a principal office at:

> Flagship 2004 Fund Ventures LLC
> One Memorial Drive
> 7th Floor
> Cambridge, MA 02142

8.    On information and belief, Defendant Irv Morrow ("Morrow") is the Chief

Technology Officer of Defendant Ze-Gen.  On information and belief, Morrow is an individual

who may be located for service of process at his place of principal employment:

> Irv Morrow, Chief Technology Officer
> Ze-Gen, Inc.
> 1380 Soldiers Field Road
> Second Floor
> Boston, MA 02135

## JURISDICTION

9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a)

and 1338(b) because this action arises under the patent laws of the United States, Title 35, United

States Code, including 35 U.S.C. § 271 *et seq.*

10.     This Court has supplemental jurisdiction pursuant to 28 U. S. C. § 1367(a) over Plaintiffs' claims arising under state law because these claims are so related to Plaintiffs' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

11.     This Court has personal jurisdiction over each of the Defendants in that each of the Defendants maintains a physical presence within the Commonwealth of Massachusetts, has purposefully directed its activities toward the Commonwealth of Massachusetts, has established minimum contacts with this forum, or has consented to this Court's exercise of personal jurisdiction.  As described in detail below, each of the Defendants has actively participated in and/or induced acts of direct and indirect infringement within this District.  Further, as described in detail below, each of the Defendants has entered into contractual and business relationships with parties in the Commonwealth, thereby establishing significant, systematic, and continuous contacts with the Commonwealth.

## VENUE

12.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1331, 1338 (a) and (b), 1391(b), (c) and (d), and 1400 (b).

## FACTS COMMON TO ALL COUNTS

### A.     Plaintiffs Quantum and TSI Own Rights To Innovative and Valuable Patented Technology

13.     Plaintiffs Quantum and TSI are affiliated companies engaged in the business of utilizing low-cost hydrocarbons, such as biomass, waste products, and coal to create environmentally friendly, low-cost energy through a complex and highly valuable gasification process.  Plaintiffs are the leaders in the field in this technology.  Their well-respected employees, which include leading scientists and graduates from the Massachusetts Institute of

Technology (MIT) and Carnegie Mellon University, have spent years creating the Plaintiffs'

technology and Plaintiffs and their predecessors in interest have expended enormous amounts in

research and development.

14.    For example, in one application of Plaintiffs' state of the art gasification

technology, a molten metal bath is used to process hydrocarbons such as coal, petroleum coke,

liquid or solid waste products to produce clean, environmentally friendly synthesis gas

(commonly referred to as "syngas").  The syngas is primarily hydrogen and carbon monoxide,

which can be used for power generation, chemical feedstocks, or to produce petroleum products

such as low sulfur diesel and naphtha.

15.    Quantum is the owner of all rights and interests in the following United States

Patents ("Patents-In-Suit"), which cover aspects of Plaintiffs' innovative technology:

| U.S. Patent No. | Title of Patent | Date Issued | Claims Asserted |
|---|---|---|---|
| 5,191,154 | Method and System for Controlling Chemical Reaction in Molten Bath | March 2, 1993 | 1 |
| 5,322,547 | Method for Indirect Chemical Reduction of Metals in Waste | June 21, 1994 | 1, 37 |
| 5,358,549 | Method of Indirect Chemical Reduction of Metals in Waste | October 25, 1994 | 1, 35 |
| 5,358,697 | Method and System for Controlling Chemical Reaction in a Molten Bath | October 25, 1994 | 1 |
| 5,436,210 | Method and Apparatus for Injection of Liquid Waste into a Molten Bath | July 25, 1995 | 1, 6, 7 |
| 5,679,132 | Method and System for Injection of a Vaporizable Material into a Molten Bath | October 21, 1997 | 1, 17-22 |
| 5,744,117 | Feed Processing Employing Dispersed Molten Droplets | April 28, 1998 | 1 |
| 5,301,620 | Reactor and Method for Disassociating Waste | April 12, 1994 | 1, 12, 13 |

16.     The Patents-In-Suit were duly and legally issued pursuant to the laws of the United States on the dates as set forth above in Paragraph 15, and they are valid and subsisting. True and correct copies of the Patents-In-Suit are attached to this Complaint as Exhibits "A" through "H".

17.     Molten Metal Technology, Inc. ("Molten Metal Technology") was the original assignee of the Patents-in-Suit.  Molten Metal Technology developed the initial molten metal bath technology covered by the Patents-in-Suit.  When Molten Metal Technology entered bankruptcy proceedings, Quantum acquired rights to the Patents-In-Suit from the Molten Metal Technology bankruptcy estate.

18.     Plaintiff TSI holds exclusive licenses to the technology protected by the Patents-in-Suit, and it and Quantum together have the right to bring suit to enforce their respective rights in the Patents-in-Suit.

19.     Other aspects of Plaintiffs' technology are kept confidential and protected as trade secrets.  These trade secrets encompass valuable and confidential business and technical information concerning Plaintiffs' proprietary gasification processes and apparatuses for implementing these processes ("Trade Secrets;" the Patents-in-Suit and Trade Secrets are sometimes referred to collectively as the Plaintiffs "Protected Technology").  These Trade Secrets relate generally to the specifications, operation parameters, design tolerances, chemical processes, and other technical information that allow Plaintiffs to generate syngas at higher efficiency, lower capital and operating cost, and with a shorter lead time to commercial operation.  The Trade Secrets give Plaintiffs significant competitive advantages over existing gasification technologies.

B.    **Defendants Infringe the Patents-in-Suit**
      **And Have <u>Misappropriated Plaintiffs' Trade Secrets</u>**

20.    Ze-Gen and the other defendants have infringed and continue to infringe

Plaintiffs' patents, and Ze-Gen, Davis, Morrow, and Vantage Point have misappropriated and are

using Plaintiffs' Trade Secrets.  In particular, but without limitation, Ze-Gen, with the knowing

and active participation, inducement, encouragement, and support of the other defendants, has

built and continues to operate an infringing gasification facility in New Bedford, Massachusetts

(the "Infringing Facility"). The Infringing Facility uses Plaintiffs' proprietary molten bath

technology to convert waste into syngas.  It uses methods and apparatuses that are covered by

and infringe Plaintiffs' patents.  The design and operation of the Infringing Facility are based on

Plaintiffs' misappropriated Trade Secrets.

21.    As a consequence, Defendants, jointly and individually, have infringed and

continue to infringe the Patents-In-Suit, either directly or indirectly, literally and/or under the

doctrine of equivalents.  The Defendants' infringing activity includes, at least, the manufacture,

use, sale, and offer for sale of infringing products, the use of infringing methods and/or inducing

the infringement of the Patents-in-Suit.

22.    Defendants had actual notice of the Patents-In-Suit and the infringing nature of

their activities before Plaintiffs filed suit.

C.    **<u>Defendants Scheme to Steal Plaintiffs' Protected Technology</u>**

23.    Defendants Ze-Gen, Davis, Morrow, Vantage Point and Flagship had knowledge

of the Patents-In-Suit and actively sought to license Plaintiffs' Protected Technology.  When

Plaintiffs and Defendants were unable to agree on the terms of a license, Defendants set out to

obtain the technology through a persistent, sustained, and concerted scheme of unfair, deceptive,

and illegal conduct.

24.     That scheme began in about late 2003 or early 2004, when defendant Bill Davis, while working at Barletta Willis Investments LLC ("Barletta"), learned of technology to decompose waste products.  Davis formed Ze-Gen on July 14, 2004.  Sometime prior to that date, he met with Michael Camara, the co-owner of defendant New Bedford Waste and the two then formed New Bedford Renewable Energy, LLC, which was a joint venture of Ze-Gen and Solid Waste Services, Inc., which is another company owned and controlled by Camara and an alter ego of New Bedford Waste.

25.     Davis learned of and, through Ze-Gen, hired several individuals who, by virtue of their prior employment, had knowledge and information relating to Plaintiffs' Protected Technology.  One of them, Igor Polovtsev, became Ze-Gen's chief science officer and advisor to Davis in or about the spring of 2004.  Another, Vic Gatto, had formerly been employed by Molten Metal Technology, from whom Plaintiffs acquired their rights to the Patents-in-Suit.  Ze-Gen hired Gatto, at least in part, because of Gatto's knowledge of Plaintiffs' patented technology.  After hiring Gatto, Ze-Gen's technology and business shifted to the use of molten metal technology.

26.     Davis and Ze-Gen also hired Eugene Berman, the former in-house patent counsel for both Molten Metal Technology and Quantum.  As a result of his prior employment, Berman was extremely familiar with the Patents-in-Suit, and, upon information and belief, he shared his knowledge with Davis and Ze-Gen, in violation of his contractual and fiduciary obligations.

27.     Apparently, once Ze-Gen had acquired information about Plaintiffs' Protected Technology, Polovtsev, Gatto, and Berman were no longer necessary.  In the summer of 2005, Ze-Gen discharged Polovtsev and Gatto.  Ze-Gen then discharged Berman in the fall of 2006, but

before doing so, Ze-Gen instructed Berman to file a patent application that was based upon the Protected Technology that now rightfully belongs to Plaintiffs.

28.    In or about 2005, Davis approached Michael Collins, a principal of TSI, and John Preston, President of Quantum, requesting a license to operate under the Patents-In-Suit. Neither TSI nor Quantum agreed to grant Defendants a license to the Patents-In-Suit. Despite their actual knowledge of the Patents-In-Suit, their ownership and subject matter, and Plaintiffs' unwillingness to grant a license on terms agreeable to Defendants, Davis and Ze-Gen nevertheless proceeded to willfully and knowingly infringe the Patents-In-Suit and misappropriate the Trade Secrets by building and operating the Infringing Facility.

29.    On information and belief, Defendant Ze-Gen also developed a number of business plans and executive summaries describing Plaintiffs' Protected Technology. Defendants used and distributed these documents to market Ze-Gen and its infringing technology and in connection with their efforts to obtain funding for the Infringing Facility. The transmission of these plans and information constitutes an infringing offer for sale under 35 U.S.C. § 271(a). Flagship provided Ze-Gen and Davis with significant funding to build and operate the Infringing Facility, despite Flagship's awareness of Plaintiffs' patents and the fact that Ze-Gen would infringe.

30.    On information and belief, at some time in 2005, New Bedford (sometimes acting through its alter ego Solid Waste Services, Inc.) entered into several contracts with Ze-Gen, including investments, leases, and waste disposal agreements. These agreements were critical to Ze-Gen's development and for funding the Defendants' Infringing Facility. Because Defendants New Bedford Waste and Ze-Gen actively participated in and/or encouraged the development of the Infringing Facility, both defendants are liable for patent infringement.

31.    Davis also analyzed the details of Molten Metal Technology's bankruptcy estate, all for the purposes of scavenging Plaintiffs' Protected Technology. The conduct of Davis, New Bedford Waste, and Ze-Gen leave no doubt that the Defendants were interested, from the inception, in infringing and misappropriating Plaintiffs' Protected Technology.

32.    In addition, on information and belief, Defendants Ze-Gen, Davis, and VantagePoint entered into a conspiracy to misappropriate Plaintiffs' Trade Secrets. As a result of their conspiracy, Ze-Gen, Davis, and VantagePoint sought to and did wrongfully acquire Plaintiffs' Trade Secrets to facilitate their infringement of the Patents-in-Suit, gain an unfair advantage in the marketplace, and otherwise enrich themselves unjustly.

33.    In furtherance of this conspiracy, Sanjay Wagle, a partner, officer, or authorized agent of VantagePoint Management, Inc. and a member of its Clean Tech group, contacted Michael Sydow and Michael Collins, officers of TSI, by telephone on or before July 27, 2007 for the purpose of wrongfully obtaining Plaintiffs' Trade Secrets. VantagePoint, through Mr. Wagle, feigned an interest in investing in TSI and sought specific Trade Secrets from TSI. Mr. Wagle deliberately failed to disclose that VantagePoint, through the affiliated and commonly controlled entities VantagePoint CleanTech Partners, LP and VantagePoint Venture Partners 2006 (Q), LP, owns a significant financial stake in Ze-Gen.

34.    Ultimately, VantagePoint succeeded in obtaining at least some of Plaintiffs' Trade Secrets and shared them with Ze-Gen and Davis.

35.    Upon information and belief, VantagePoint, Ze-Gen, and Davis have taken other actions in furtherance of their conspiracy to obtain Plaintiffs' Trade Secrets, and they have wrongfully used those Trade Secrets to facilitate their infringement of the Patents-in-Suit.

**D.    Defendants File Fraudulent Patent Applications
To Further Misappropriate Plaintiffs' Protected Technology**

36.    Before terminating Berman's employment, Ze-Gen instructed Berman to file a patent application that was based upon Molten Metal Technology's own trade secret and patented technology – the technology that now rightfully belongs to Plaintiffs.

37.    Ze-Gen and Davis have similarly drafted, filed, and prosecuted other fraudulent patent applications that purport to claim rights in technology that Defendants knew belonged to Plaintiffs.

38.    In particular, but without limitation, Ze-Gen and Davis have committed fraud on the USPTO and violated their duty of candor by filing fraudulent patent applications that name Davis as an inventor, when in reality, these patent applications are based entirely on Plaintiffs' technology.  Ze-Gen and Davis have further committed fraud on the USPTO and violated their duty of candor by misrepresenting the state of the prior art by, among other actions, purposefully failing to notify the USPTO of the Patents-in-Suit and other patents assigned to Plaintiffs or Molten Metal Technology.

**E.    All Defendants Knowingly Participate In And Encourage
The Infringement And All Share Financial Benefits
From The Infringement and Other Wrongful Conduct**

39.    New Bedford Waste has knowingly and directly participated in the infringing activity and has significantly encouraged the infringing activity; indeed, the Infringing Facility is *de facto* a joint venture between New Bedford Waste and Ze-Gen.  Ze-Gen's website currently states, and has stated for several years, that it is operating the Infringing Facility "in conjunction with New Bedford Waste Services, LLC."  Specifically:

> Ze-gen, in conjunction with New Bedford Waste Services, LLC (NBWS), is conducting a demonstration of Ze-gen's gasification technology at NBWS's C&D and MSW processing facility located at 1245 Shawmut Avenue in New Bedford, Massachusetts. Specifically, the demonstration project accepts construction and demolition (C&D) residual material that is processed at the NBWS facility and to use it

11

as the primary feed stock in a gasification process that utilizes molten bath technology. The products of the gasification process are a syngas, primarily carbon monoxide and hydrogen, which are both energy rich gases. Slag is produced as a by-product in the gasification process which can be used as construction aggregate.

NBWS's facility has been site assigned by the City of New Bedford and permitted by DEP to handle, process and transfer up to 1,500 tons per day of C&D material, municipal solid waste (MSW) and scrap tires.

The test facility began operating in October of 2007, and target syngas quality was achieved in under 6 months.

http://www.ze-gen.com/seeing.htm. (accessed November 12, 2008).

40.    In particular, but without limitation, New Bedford Waste worked jointly with Ze-Gen to put together a bid to the City of New Bedford to develop the Infringing Facility. New Bedford Waste contributed and allowed Ze-Gen to locate the Infringing Facility on portions of a five-acre site that already had obtained the required permits from the Massachusetts Department of Environmental Protection and the City of New Bedford necessary for incinerating and processing solid waste. The use of New Bedford Waste's property was essential to Ze-Gen and the infringing activity, because it allowed Ze-Gen to obtain permits for the Infringing Facility. In fact, but for the site assignment by New Bedford Waste, Ze-Gen otherwise could not have obtained the necessary permits and constructed the Infringing Facility in Massachusetts.

41.    New Bedford Waste has also actively sought and obtained investors for Ze-Gen. The principals of New Bedford Waste made an investment in Ze-Gen through a related entity, as did their family members. New Bedford Waste brought other investors to Ze-Gen, and it hosted presentations to potential investors at its offices.

42.    New Bedford Waste has entered into an agreement with Ze-Gen to supply the Infringing Facility with feedstock and other materials. It also leases equipment to Ze-Gen that is used to prepare feedstock materials for processing in the Infringing Facility. From time to time,

it has shared employees with Ze-Gen, with Ze-Gen picking up part of the compensation of these highly-paid employees.

43.    New Bedford Waste has also substantially benefited from the infringing activity. Ze-Gen made significant improvements to buildings on the New Bedford Waste property, which improvements will belong to New Bedford Waste.  New Bedford Waste provides feedstock to the Infringing Facility and thus benefits from significantly lower disposal costs for the solid waste it collects.  The gate fees charged by Ze-Gen are lower than those New Bedford Waste otherwise would pay, and, even more importantly, because the Infringing Facility is located on New Bedford Waste's property, New Bedford Waste avoids the significant costs it otherwise would incur in transporting waste to a facility in Maine.

44.    VantagePoint has also knowingly participated in, contributed to, caused, and induced the infringement of the Patents-In-Suit.  VantagePoint, through the affiliated limited partnerships that it controls, made a significant cash investment in Ze-Gen, which investment was intended to and does provide Ze-Gen with the funds necessary to build and operate the Infringing Facility.  VantagePoint made this investment despite its knowledge that Ze-Gen's operations infringed the Patents-In-Suit, and it made the investment to encourage and facilitate Ze-Gen's infringement.

45.    Moreover, VantagePoint, thorough one of its general partners, actively participates in the governance and management of Ze-Gen's business. As a result of its investment in Ze-Gen, VantagePoint acquired the right to appoint a representative to Ze-Gen's Board of Directors, in order to monitor its investment and to ensure that Ze-Gen operates and conducts business in the best interests of VantagePoint.  VantagePoint's appointee, Scott Brown, is the co-founder and practice leader of the infrastructure practice at VantagePoint and a member

of its Clean Tech group.  Mr. Brown services as one of the five members of Ze-Gen's Board of Directors, and he serves in this role within the scope of his authority as a partner or employee of VantagePoint.  Mr. Brown is actively involved in Ze-Gen's business and he participates in, encourages, and knowingly fails to prevent the infringing activity.

46.    Flagship has also knowingly participated in, contributed to, caused, and induced the infringement of the Patents-In-Suit.  Flagship made a significant cash investment in Ze-Gen, which investment was intended to and does provide Ze-Gen with the funds necessary to build and operate the Infringing Facility.  Flagship made this investment despite its knowledge that Ze-Gen's operations infringed the Patents-In-Suit.

47.    Moreover, Flagship, thorough one of its general partners, actively participates in the governance and management of Ze-Gen's business. As a result of its investment in Ze-Gen, Flagship acquired the right to appoint a representative to Ze-Gen's Board of Directors, in order to monitor its investment and to ensure that Ze-Gen operates and conducts business in the best interests of Flagship.  Flagship's appointee, Jim Matheson, who is a General Partner of Flagship Ventures, serves as Chairman of the Board of Directors of Ze-Gen, and he serves in this role within the scope of his authority as a partner of Flagship.  Mr. Matheson is actively involved in Ze-Gen's business and he participates in, encourages, and knowingly fails to prevent the infringing activity.

48.    By virtue of their significant investments, the rights granted to them in the documents structuring their investments, their representation on Ze-Gen's Board by their partners and/or employees, and their active involvement in the management of Ze-Gen's business, VantagePoint and Flagship have the right, influence, and/or ability to control Ze-Gen's involvement in infringing activity, and they exercise that power to encourage and induce

infringement.  VantagePoint and Flagship possess direct financial interests in promoting such infringing activity.

## CLAIMS FOR RELIEF

### COUNT I - INFRINGEMENT OF THE PATENTS-IN-SUIT

.

49.    Plaintiffs repeat and reincorporate by reference the allegations set forth in paragraphs 1 through 48.

50.    By virtue of the above alleged facts, Defendants have infringed the Patents-In-Suit in violation of 35 U.S.C. § 271.

51.    Based on information and belief, all of the defendants have directly infringed and continue to directly infringe one or more of the Patents-In-Suit under 35 U.S.C. § 271(a).  These infringing acts include at least the manufacture, use, sale, and/or offer for sale of an infringing apparatus and/or infringing method, as well as actively and knowingly participating in, encouraging, and aiding and abetting direct infringement.

52.    In addition, based on information and belief, New Bedford Waste, VantagePoint, Flagship, and Morrow also have encouraged and induced and continue to encourage and induce the infringement of the Patents-In-Suit under 35 U.S.C. § 271(b).

53.    Based on information and belief, Defendants' infringement of the Patents-In-Suit is willful and deliberate, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

54.    Based on information and belief, Defendants' infringing acts have been the actual and proximate cause of damage to Plaintiffs and will continue to cause monetary damages, as well as irreparable harm, unless Defendants are enjoined by this Court from continuing to infringe, contribute to, and/or induce infringement of the Patents-In-Suit.

## COUNT II - CASE EXCEPTIONAL 35 U.S.C. § 285

55.     Plaintiffs repeat and reincorporate by reference the allegations set forth in paragraphs 1 through 54.

56.     Based on information and belief, Defendants' infringement of the Patents-In-Suit is willful and deliberate, entitled Plaintiffs to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT III - MISAPPROPRIATION OF TRADE SECRETS

57.     Plaintiffs repeat and reincorporate by reference the allegations set forth in paragraphs 1 through 56.

58.     Based on information and belief, Defendants Ze-Gen, Davis, and VantagePoint have misappropriated Plaintiffs' Trade Secrets.

59.     Plaintiffs have made a substantial investment of time, effort, and money in creating the Trade Secrets and have property rights therein.  The Trade Secrets comprise formulae, devices and/or compilations of information used in business that are not generally known and which give Plaintiffs an opportunity to obtain an advantage over competitors who do not know or use the Trade Secrets.

60.     Based on information and belief, Defendants Ze-Gen, Davis, and VantagePoint have wrongfully acquired or otherwise misappropriated the Trade Secrets by breach of confidential relationship or other improper means.  Defendants Ze-Gen, Davis, and VantagePoint have used and are using the Trade Secrets without Plaintiffs' authorization.

61.     By virtue of the foregoing conduct, Defendants Ze-Gen, Davis, and VantagePoint are unjustly enriched and have an unfair advantage in using the Trade Secrets without having the expense of either a legal license or of bearing the time and expense of independently developing the Trade Secrets.

62.     Defendants Ze-Gen, Davis, and VantagePoint have and continue to unfairly compete with Plaintiffs by engaging in the acts set forth herein.

63.     The acts of Defendants Ze-Gen, Davis, and VantagePoint have been the actual and proximate cause of damage to Plaintiffs and will continue to cause monetary damages, as well as irreparable harm to Plaintiffs for which it has no adequate remedy at law, unless Defendants Ze-Gen, Davis, and VantagePoint are enjoined by this Court from continuing to wrongfully exploit the Trade Secrets.

<u>**COUNT IV – UNFAIR COMPETITION**</u>

64.     Plaintiffs repeat and reincorporate by reference the allegations set forth in paragraphs 1 through 63.

65.     The conduct described in this Complaint constitutes unfair competition, in violation of Massachusetts and other states' common law.

66.     By virtue of this wrongful conduct, Defendant Ze-Gen is unjustly enriched and has an unfair advantage in using the Plaintiffs' Protected Technology, without having the expense of either a legal license or of bearing the time and expense of independently developing Plaintiffs' Protected Technology.

67.     Defendant Ze-Gen has competed unfairly and continues to compete unfairly with Plaintiffs by engaging in the acts described in this Complaint.

68.     These acts have been the actual and proximate cause of damage to Plaintiffs and will continue to cause monetary damages, as well as irreparable harm to Plaintiffs for which it has no adequate remedy at law, unless Defendant Ze-Gen is enjoined by this Court from continuing to engage in unfair competition.

## COUNT IV – VIOLATIONS OF MASS. GEN. L. C. 93A

69.    Plaintiffs repeat and reincorporate by reference the allegations set forth in paragraphs 1 through 68.

70.    Plaintiffs are engaged in the conduct of trade and commerce.

71.    Defendants Ze-Gen, Davis, and VantagePoint are engaged in the conduct of trade and commerce.

72.    Defendants Ze-Gen, Davis, and VantagePoint have engaged in unfair, deceptive, and unlawful acts and unfair methods of competition in violation of M. G. L. c. 93A, §§ 2 and 11 by, among other things, knowingly misappropriating and claiming ownership of Plaintiffs' Trade Secrets and Protected Technology to compete unfairly with Plaintiffs.

73.    Plaintiffs have suffered losses of money and property as a result of the Defendants' wrongful conduct.

74.    Defendants Ze-Gen, Davis, and VantagePoint have willfully and knowingly engaged in these unfair methods of competition and these unfair, deceptive and unlawful acts and practices.

75.    Plaintiffs are entitled to immediate equitable relief, including an order directing the Defendants to cease using Plaintiffs' Trade Secrets and Protected Technology, as well as an award of actual damages, multiple damages and attorneys fees.

## PRAYER FOR RELIEF

WHEREFORE, Quantum Catalytics, Inc. and Texas Syngas, Inc., pray that this Court enter judgment as follows:

A.    That a preliminary and permanent injunction be issued restraining Defendants, Ze-Gen, Inc., William Davis, New Bedford Waste Services, LLC, VantagePoint Management, Inc., VantagePoint CleanTech Partners, LP, VantagePoint Venture Partners 2006 (Q), LP, Flagship Ventures 2004 Fund LLC, and Irv Morrow (collectively "Defendants"), their agents, servants, employees and attorneys and those persons in active concert or participation with them, from infringing, contributing to infringement and/or inducing others to infringe the above listed United States Patents pursuant to 35 U.S.C. § 283.

B.    That a judgment against Defendants be entered for such patent infringement and damages found, together with interest and costs pursuant to 35 U.S.C. § 284;

C.    That in such judgment, the actual damages found for such infringement be trebled as authorized by 35 U.S.C. § 284 in view of the knowing, willful, and intentional nature of Defendants' actions;

D.    In light of the exceptional nature of the acts of Defendants, that such judgment include judgment for the reasonable and necessary attorneys' fees required in pursuit of this action pursuant to 35 U.S.C. § 285;

E.    That a preliminary and permanent injunction be issued restraining Defendants Ze-Gen, Inc., William Davis, VantagePoint Management, Inc., VantagePoint CleanTech Partners, LP, and VantagePoint Venture Partners 2006 (Q), LP, and their agents, servants, employees and attorneys and those persons in active concert or participation with them, from using, disclosing, or otherwise misappropriating Plaintiffs' Trade Secrets, or otherwise engaging in unfair competition;

F.    That judgment be entered for the damages found and attributed to Defendants' unfair competition and trade secret misappropriation;

G.    That judgment against Defendants be entered for violations of Mass. Gen. L. c. 93A, §§ 2 and 11, and that such violations were willful;

H.    That judgment against Defendants be entered for the damages found and attributed to Defendants' unfair methods of competition and unfair, deceptive, and unlawful practices in violation of M. G. L. c. 93A, §§ 2 and

11, trebled on account of defendants' willful conduct, plus Plaintiffs' costs and reasonable attorneys' fees; and

I.    An award of prejudgment and post-judgment interest and such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38 (b) Plaintiffs demand a trial by jury on all issues so triable.

DATED:  January 30, 2009                    Respectfully submitted,

                                            QUANTUM CATALYTICS, LLC and
                                            TEXAS SYNGAS, INC.

                                            By their attorneys,

                                            BROWN RUDNICK LLP

                                            By:  _/s/ Edward J. Naughton_____
                                                 Edward J. Naughton (BBO#600059)
                                                 Benjamin M. Welch (BBO# 663456)
                                                 One Financial Center
                                                 Boston, Massachusetts 02111
                                                 617.856.8200
                                                 enaughton@brownrudnick.com

                                                 *Of counsel:*
                                                 Kelly D. Stephens (*pro hac vice*)
                                                 Southern District of Texas #8535
                                                 Texas State Bar No. 19158300
                                                 1127 Harvard
                                                 Houston, Texas 77008
                                                 Phone:  713.252.4945

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent those indicated as non-registered participants on January 30, 2009.

/s/  Edward J. Naughton
Edward J. Naughton (BBO #600059)